# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| LHIQUITA MICHELLE LEWIS-SMITH, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-00027 |
| | § | Judge Mazzant |
| BAYLOR REGIONAL MEDICAL CENTER AT PLANO, | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Rule 12(b)(6) Motion for Summary Judgment (Dkt. #23). Having considered the motion and the relevant pleadings, the Court finds that Defendant's motion should be **GRANTED in part** and **DENIED in part**.

### BACKGROUND

This case arises from the former employer-employee relationship between Plaintiff and Defendant. Defendant hired Plaintiff as a Lab Tech II—a position Plaintiff held from December of 2017 to October 30, 2019. Plaintiff's primary responsibilities included "receiving specimens, checking in specimens from surgery, and conducting blood draws" (Dkt .#23 at p. 9).

In October 2019, Plaintiff's supervisor, Kelly Wilder ("Wilder"), informed Plaintiff that Plaintiff's job position would be eliminated. On October 24, 2019, Plaintiff engaged in a verbal altercation with Wilder. On October 30, 2019, Monica Huerta ("Huerta"), a Lab Manager, and Teresa Melendez ("Melendez"), a human resources professional, conducted a discharge meeting with Plaintiff over the telephone. Defendant did not hire a replacement. On December 12, 2019, Plaintiff filed a Charge of Discrimination (the "Charge") with the Texas Workforce Commission

and the Equal Employment Opportunity Commission ("EEOC") alleging race and age-based harassment, age discrimination, and retaliation. The same day, Plaintiff requested and received a Right to Sue letter.

On January 26, 2021, Defendant filed the present motion (Dkt. #23). On February 9, 2021, Plaintiff filed her response (Dkt. #24). On February 16, 2021, Defendant filed its reply (Dkt. #25).

## **LEGAL STANDARD**[1]

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden

---

[1] Defendant's motion includes continuous references to summary judgment standards and evidence. The only mention of 12(b)(6) is in the title of the motion. Further, Plaintiff styles her response as "Response of Plaintiff to the Motion for Summary Judgment of Defendant" (Dkt. #24). The Court notes that Defendant styles its motion as a Rule 12(b)(6) Motion for Summary Judgment. Plaintiff addresses the 12(b)(6) standard within her response; however, the Court is persuaded that the motion is one for summary judgment.

of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Defendant asserts an entitlement to summary judgment on: (1) Plaintiff's age discrimination claim; (2) Plaintiff's racially hostile work environment claim; and (3) Plaintiff's retaliation claim. The Court will address each of Defendant's arguments in turn.

**I.     Age Discrimination**

Defendant argues that summary judgment is warranted on Plaintiff's age discrimination claim. Specifically, Defendant argues that: (1) Plaintiff cannot establish a prima facie case of age discrimination; (2) even if Plaintiff did establish a prima facie case, Defendant has a legitimate, non-discriminatory reason for discharging Plaintiff; and (3) Plaintiff cannot establish pretext or but-for causation.

Plaintiff responds by withdrawing her age discrimination claim. Because Plaintiff has withdrawn the claim, the Court does not address it further.

**II.    Racially Hostile Work Environment**

Defendant also argues that summary judgment is proper on Plaintiff's racially hostile work environment claim. Defendant specifically claims that: (1) Plaintiff failed to exhaust her administrative remedies regarding the allegedly racist comments, which are outside the scope of the Charge; (2) without the allegedly racist comments, Plaintiff's remaining harassment allegations are not race-based; (3) even if the Court were to consider all of the alleged racist comments by Irene Napier ("Napier") and Maria[2], they are nothing more than stray remarks; (4) even if the Court were to consider the alleged "Blacks are all the same" comment by Wilder, it is too vague to constitute a racially hostile comment; (5) even if the Court were to consider all of the comments omitted from Plaintiff's charge, Plaintiff cannot establish they were severe or pervasive, that the interfered with her work performance, or that they were physically threatening; and (6) Plaintiff admits that Defendant took prompt, remedial action.

Plaintiff responds that her sworn testimony shows Defendant "had . . . a hostile racial environment against African Americans[;]" that "[s]hortly before [she] was wrongfully terminated,

---

[2] Plaintiff does not provide Maria's last name.

4

other African Americans [working for Defendant] were also wrongfully terminated," and that "racial slurs were directed at [her] by Hispanics who worked [for Defendant]" (Dkt. #24 at pp. 7–8). Plaintiff asserts that she attempted to remedy the problem by informing supervisors, but the issues remained unresolved. Further, Plaintiff claims "one sort of racist comment or another [was] more or less continuous and it is a reasonable inference that similar racist comments would have continued unabated after October 30, 2019 had [Plaintiff] not been terminated" (Dkt. #24 at p. 10). Plaintiff states that Defendant's argument regarding Plaintiff's failure to exhaust her administrative remedies is "without merit" (Dkt. #24 at p. 11). The Court will first address Defendant's EEOC argument. Then, the Court will address Defendant's subsequent arguments.

### a. Failure to Exhaust Administrative Remedies

Defendant asserts "[it] is undisputed that Plaintiff failed to include any of the allegedly racist comments in her Charge or in her EEOC Intake Questionnaire" (Dkt. #23 at p. 20). Defendant further argues that allowing Plaintiff to bring a claim for a racially hostile work environment would "allow Plaintiff to ambush [Defendant] and circumvent the exhaustion requirement" (Dkt. #23 at p. 22).

Plaintiff responds that she did exhaust her administrative remedies, and Defendant's claim to the contrary is without merit. Plaintiff claims she checked the box for racial discrimination and, due to the liberal construction of EEOC claims, summary judgment is improper.

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Id.* (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir. 1996)).

5

"Because 'the provisions of Title VII were not designed for the sophisticated,' and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally." *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006) (first quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970); and then citing *Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 451 (5th Cir. 1983)). Thus, "what is properly embraced in review of a Title-VII claim" is interpreted "somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Id.* at 789 (quoting *Sanchez*, 431 F.2d at 466). Notably, however, "[c]ourts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). "[A] Title VII lawsuit may include allegations 'like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission.'" *Id.* (quoting *Sanchez*, 431 F.2d at 466).

Plaintiff's EEOC Charge alleges discrimination based upon race, retaliation, and age (Dkt. #23, Exhibit 1 at p. 101, 106). Further, in the EEOC charge, Plaintiff stated she believed that she "ha[s] been discriminated against because of [her] race" (Dkt. #23, Exhibit 1 at p. 101). In the Intake Questionnaire, Plaintiff asserts that she has "26 years of work experience and never in [her] life [has] [she] seen racism and hatred for people of color up close and personal since [she] started working for [Defendant]" (Dkt. #23, Exhibit 1 at p. 105).

The facts alleged within Plaintiff's EEOC Charge and Intake Questionnaire do include complaints of racism. Though the complaints are not fully developed, nor are specific comments cited, the Court is persuaded that Plaintiff has made allegations in the present case that "grow[]

6

out of such allegations [made in the EEOC Charge]." *Sanchez*, 431 F.2d at 466. Thus, Plaintiff did satisfy her administrative remedies. The Court will now address Defendant's subsequent arguments.

### b. Racially Hostile Work Environment Factors

"Title VII . . . makes it unlawful for employers to require 'people to work in a discriminatorily hostile or abusive environment.'" *West v. City of Hous., Tex.*, 960 F.3d 736, 741 (5th Cir. 2020) (quoting *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019) (internal quotation omitted)). "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (quoting 42 U.S.C. § 2000e–5(e)(1)). "To survive summary judgment on a hostile work environment claim based on race or sex discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she suffered unwelcomed harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment 'affected a term, condition, or privilege of employment'; and (5) 'the employer knew or should have known' about the harassment and 'failed to take prompt remedial action.'" *West*, 960 F.3d at 741 (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). Because the Court finds that Plaintiff has failed to raise a genuine issue of material fact that the harassment, if any, "affected a term, condition, or privilege of employment[,]" *Ramsey*, 286 F.3d at 268, the Court need not address the other elements.

### i. Harassment "Affected a Term, Condition, or Privilege of Employment"[3]

The complained-of harassment must have affected a term, condition, or privilege of Plaintiff's employment to support a claim for a racially hostile work environment. Defendant claims this element is not met because "Plaintiff admits that the alleged harassment did not unreasonably interfere with her work performance" (Dkt. #23 at p. 26). Plaintiff responds that "the harassment obviously affected a term or condition of her employment because she was wrongfully terminated by [Defendant] on October 30, 2019" (Dkt. #24 at p. 12).

"The phrase 'terms, conditions, or privileges of employment' includes requiring people to work in a discriminatorily hostile or abusive requirement." *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 440 (5th Cir. 2011) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "To affect a term, condition, or privilege of employment, the harassing conduct 'must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 453 (5th Cir. 2013) (quoting *Aryain v. Wal-Mart Stores of Tex., L.P.*, 534 F.3d 473, 479 (5th Cir. 2008)). Further, "'mere utterance of an . . . epithet which engenders offensive feelings in an employee' . . . does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (internal quotations omitted)). However, "[a] discriminatorily abusive work environment . . . can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." *Id.* at 22. "Moreover, even without regard to these tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a

---

[3] No dispute appears to exist that Plaintiff is a member of a protected class. The Court assumes without deciding that Plaintiff was, in fact, subjected to unwelcome harassment and that the harassment was based on her membership in a protected class.

work environment abusive to employees because of their race . . . offends Title VII's broad rule of workplace equality." *Id.*

In determining whether a work environment is objectively hostile, the Court looks to the totality of the circumstances. *See id.* at 23. "Although no single factor is determinative, pertinent considerations are (1) 'the frequency of the discriminatory conduct'; (2) 'its severity'; (3) 'whether it is physically threatening or humiliating, or a mere offensive utterance'; and (4) 'whether it unreasonably interferes with an employee's work performance.'" *West*, 960 F.3d at 742 (quoting *Harris*, 510 U.S. at 23). "To survive summary judgment, the harassment must be 'so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the work place.'" *Hockman v. Westward Communications, LLC*, 122 F. App'x 734, 742–43 (5th Cir. 2004) (quoting *Shepherd v. Comptroller of Pub. Accts. of State of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999)).

### 1. Frequency of the Discriminatory Conduct

Plaintiff was employed by Defendant for approximately two years—December 2017 to October 30, 2019. Throughout those two years of employment, Plaintiff claims she was subject to constant racial slurs. Plaintiff alleges that while "some of [the racist comments] were not repeated . . . one sort of racist comment or another [was] more or less continuous" (Dkt. #24 at p. 10). However, Plaintiff only specifically identified five racial comments—hardly enough to be considered severe or pervasive for Title VII purposes. *See McCray v. DPC Indus., Inc.*, 942 F. Supp. 288, 293 (E.D. Tex. 1996) ("Similarly, racial comments that are sporadic or part of casual conversation do not violate Title VII." (collecting cases)). Thus, the Court is not persuaded that the frequency of the discriminatory conduct supports a finding that the alleged harassment affected a term, condition, or privilege of Plaintiff's employment as to support a claim for a racially hostile work environment.

### 2. Severity of the Discriminatory Conduct

The Court is also not convinced that the comments allegedly made were so severe as to constitute a racially hostile work environment.[4]

Plaintiff asserts that Napier, another employee of Defendant, stated that people in the building "[did not] want [Plaintiff's] black face [in the building]" (Dkt. #23, Exhibit 1 at p. 17). Further, Plaintiff claims that Wilder, one of Defendant's supervisors, told Plaintiff that "Blacks are the same" (Dkt. #24 at p. 8). Plaintiff claims that Napier also "liked to talk to the African Americans who worked at BRMCP about the fact that their ancestors were slaves" (Dkt. #24 at p. 8). Plaintiff finally alleges that "racial slurs were directed at [her] by Hispanics who worked [for Defendant,]" and that the slurs included calling Plaintiff a "morena puta" (Dkt. #24 at p. 8).[5]

These comments, though arguably offensive, are not sufficiently severe or pervasive to give rise to an actionable Title VII claim. While "a regular pattern of frequent verbal ridicule or insults sustained over time can constitute severe or pervasive harassment sufficient to violate Title VII[,]" *E.E.O.C. v. WC&M Enter., Inc.*, 496 F.3d 393, 400 (5th Cir. 2007) (citations omitted), the Court is not persuaded that these five remarks constitute "frequent verbal ridicule or insults." *Id.* Rather, the Court finds these comments more akin to "offhand comments" that do "not amount to discriminatory changes in the 'terms and conditions of employment.'" *Gibson v. Potter*, 264 F. App'x 397, 401 (5th Cir. 2008) (quoting *Shepherd*, 168 F.3d at 874). Thus, this factor does not

---

[4] The Court acknowledges Defendant's pending Motion to Strike Portions of the Declaration of Plaintiff in Support of Plaintiff's Summary Judgment Response (Dkt. #26). However, the Court is not persuaded that, even considering all comments, Plaintiff has asserted a viable claim against Defendant for a racially hostile work environment. Thus, for purposes of this claim, the Court assumes that all comments offered by Plaintiff are proper evidence. As to Defendant's objections regarding Plaintiff's support for her retaliation claim, the Court considers only that evidence that satisfies the requirements of Rule 56 of the Federal Rules of Civil Procedure. *See Swanston v. City of Plano*, No. 4:19-cv-412, 2020 WL 6799173, at *3 n.3 (E.D. Tex. Nov, 19, 2020).
[5] According to Plaintiff, "morena puta" is a "Spanish word for a prostitute and black skinned woman" (Dkt. #24 at p. 8).

support finding that the alleged harassment affected a term, condition, or privilege of Plaintiff's employment.

### 3. Whether Conduct is Physically Threatening or Humiliating

Plaintiff does not assert that the comments were physically threatening or humiliating. Plaintiff does note a verbal altercation that occurred between herself and Napier, but no facts indicate that the altercation was physical. Thus, the Court does not find that the alleged harassment affected a term, condition, or privilege of Plaintiff's employment.

### 4. Unreasonable Interference with Work Performance

Plaintiff's own declaration supports a finding that her work performance was not affected by the allegedly hostile work environment. In support of her retaliation claim, Plaintiff asserts that her termination was causally connected to her complaining of racial comments. Plaintiff supports this assertion by noting that she "had a good evaluation during [her] entire tenure at BRMCP" (Dkt. #24 at p. 9). In fact, Plaintiff indicates that she "had been named '2019 Medical Laboratorian of the Year Support Staff' by [her] peers" and "Supervisor Kelly Wilder" (Dkt. #24 at p. 9). Plaintiff further states that her "performance was excellent" (Dkt. #24 at p. 11).

Plaintiff has advocated her good performance to the Court. Plaintiff continued to receive awards, recognition, and good reviews. Further, several racist comments—upon being reported to Defendant—were never stated again (*see* Dkt. #23, Exhibit B at pp. 17, 19, 36). The cessation of the comments indicates that the remarks were not pervasive. The Court therefore does not find this factor supports a finding that the alleged harassment affected a term, condition, or privilege of Plaintiff's employment.

After considering all the relevant factors, the Court finds that any harassment alleged by Plaintiff did not affect a term, condition, or privilege employment as to constitute a racially hostile

11

work environment. The only support Plaintiff offers is the ultimate decision by Defendant to terminate Plaintiff. However, Plaintiff does not show that she was unable to do her job, that the comments caused her performance to suffer, or that the comments even rose to a level or consistency to make the workplace objectively hostile. Although Plaintiff felt subjected to a hostile work environment, the facts do not indicate that the comments were "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Boh Bros. Const. Co., L.L.C.*, 731 F.3d at 453 (internal quotations omitted). Thus, Plaintiff has not carried her burden to show a material fact issue exists on her claim for a hostile work environment because she has not shown that her "opportunity to succeed in the workplace" was "destroyed" by the alleged harassment. *Hockman*, 122 F. App'x at 742–43.

### III. Retaliation

Defendant argues that summary judgment is proper on Plaintiff's retaliation claim. Defendant specifically contends that: (1) Plaintiff cannot establish a causal connection between the protected activity and any adverse employment action; (2) Defendant can establish a legitimate, non-discriminatory reason for Plaintiff's discharge; and (3) Plaintiff has no evidence of pretext or but-for cause.

Plaintiff asserts that she has established the elements of her retaliation claim and summary judgment is therefore improper.

The Court utilizes the *McDonnell-Douglas* framework in analyzing whether an employer unlawfully retaliated against an employee in violation of Title VII. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). The test laid out by the Supreme Court in *McDonnell Douglas Corp. v. Green* operates as a burden-shifting framework—first requiring Plaintiff to present a prima facie case as to unlawful retaliation. *See* 411 U.S. 792, 802 (1973). "To establish a prima

facie case of retaliation, the plaintiff must establish that: (1) [she] participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy*, 492 F.3d at 556–57 (first citing *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003); and then citing *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)).

"If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action." *Id.* at 557 (citing *Gee*, 289 F.3d at 345). "The employer's burden is one only of production, not persuasion, and involves no credibility assessment." *Id.* (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)). "If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose." *Id.* (citing *Russell*, 235 F.3d at 222). "To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." *Id.* (citing *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

After a careful review of the record, the Court is not convinced that Defendant has met its burden in demonstrating that there is no genuine issue of material fact as to Plaintiff's unlawful retaliation claim that would entitle Defendant to judgment as a matter of law. Thus, summary judgment on Plaintiff's unlawful retaliation claim is improper.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Rule 12(b)(6) Motion for Summary Judgment (Dkt. #23) is hereby **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** Plaintiff's claim of a hostile work environment is hereby **DISMISSED with prejudice**. Plaintiff's unlawful retaliation claim shall proceed to trial.

It is further **ORDERED** that Motion to Strike Portions of the Declaration of Plaintiff in Support of Plaintiff's Summary Judgment Response (Dkt. #26) is hereby **DENIED as moot**.

**SIGNED this 19th day of March, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE